IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-31062
Summary Calendar
_____


THE SECURITY TITLE GUARANTEE CORPORATION OF BALTIMORE,

                                        Plaintiff-Appellee,

                versus

UNITED GENERAL TITLE INSURANCE COMPANY,

                Defendant-Third Party Plaintiff-Appellant,

                versus

STEWART TITLE GUARANTY COMPANY,

                        Third Party Defendant-Appellee.
_____

        Appeal from the United States District Court for the
                    Eastern District of Louisiana
                          (95-CV-1519)
_____

                          May 29, 1996

Before JOLLY, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]

        The sole issue on appeal is the district court's Rule 54(b)
dismissal of United General Title Insurance Company's ("United")
claim for punitive damages.  We affirm.

        The fundamental dispute in this matter concerns the correct
choice of state law with respect to a claim for punitive damages.

        [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

The parties agree that, should Louisiana law apply, United is not entitled to punitive damages. La. C.C. arts. 2315.3, 2315.4, 2315.7; see also Billiot v. B.P. Oil Co., 645 So.2d 604, 612-13 (discussing Louisiana's narrow authorization of exemplary or punitive damages). However, if Texas or Maryland law is the proper choice, punitive damages may be appropriate.

The parties to this litigation (United, Security Title Guarantee Corporation of Baltimore, and Stewart Title Guaranty Company) are competing title insurers who transact business in the state of Louisiana. Each engaged the now defunct Charter Title Ltd. ("Charter") to act as its agent in connection with Louisiana real estate closings. In or about December 1994, Security Title Guarantee Corporation ("Security") learned that Charter lacked sufficient funds to pay premiums due and owing to Security. About that same time, Stewart Title Guaranty Company ("Stewart") became concerned over Charter's solvency and conducted an audit in New Orleans of Charter's escrow accounts. United alleges that, upon learning of Charter's shaky financial situation, both Stewart and Security terminated their agency agreements with Charter and made contemporaneous corporate decisions in their respective home offices not to notify the Louisiana Insurance Commissioner of Charter's insolvency, which violated the Louisiana Insurance Code. United learned of Charter's escrow shortages in January 1995. Charter thereafter collapsed, and Security initiated this

litigation by seeking a declaratory judgment to absolve itself of liability.

United responded by filing a counterclaim against Security and a third-party claim against Stewart. United contended that Security and Stewart breached their duty to inform United and the Louisiana Insurance Commissioner of Charter's financial situation. United further contended that Security and Stewart aided and abetted the commission of a fraudulent insurance act by diverting funds from United-insured transactions to cover disbursements in transactions that Security and Stewart insured. United claimed punitive damages in the amount of $50,000,000. Security and Stewart moved to dismiss United's claims and, in the alternative, to strike United's punitive damage claim. After hearing oral argument on the motions, the district court declined to dismiss the lawsuit but granted the motions to strike United's punitive damages claim. In its ruling, the district court concluded that the Louisiana Civil Code (the "Code"), and in particular Article 3548 of the Code, barred an award of punitive damages to United. The district court issued a final judgment under F.R.C.P. 54(b) on the issue of punitive damages, from which United appeals.

On appeal, United argues that the district court should have applied the substantive laws of Texas and Maryland to its claim for punitive damages and calls our attention to the relevant choice of law rules contained in Code Articles 3546 and 3548. In applying

Article 3546[1] to this case, we must focus on three potentially different locations, each of which is related to the tortfeasor (referred to hereinafter as an "Article 3546 location"):

    (1)  where the injurious conduct occurred;

    (2)  where the resulting injury occurred; and

    (3)  where the person whose conduct caused the injury was domiciled.

As drafted, Article 3546 expressly prohibits a Louisiana court from awarding punitive damages unless the substantive law of no less than two of the Article 3546 locations authorizes such an award. See LOUISIANA AND COMPARATIVE CONFLICTS LAW 328 (3d ed. 1992) (discussing the meaning and operation of Article 3546).

At the outset, the parties disagree over the first Article 3546 location. United maintains that the injurious conduct occurred in Texas and Maryland. According to United, the tortious conduct consisted of two separate corporate decisions: one made in

---

[1]Article 3546 provides:

**Art. 3546. Punitive damages**
    Punitive damages may not be awarded by a court of this state unless authorized:

(1)  By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or

(2)  By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

Texas at Stewart's home office and the other in Maryland at Security's home office. United claims that each home office made a deliberate decision not to notify the Louisiana Insurance Commissioner of Charter's insolvency. Stewart and Security counter that the <u>decision</u> to take (or not to take) an action does not constitute a tort. Without conceding fault, they maintain that the injurious conduct, if any, was the act of failing to transmit information to the Insurance Commissioner in Baton Rouge. This failure to inform, they argue, occurred in Louisiana.

The situs of the second Article 3546 location is not disputed. All parties agree that the resulting injury occurred in Louisiana.

Finally, the third Article 3546 location, the tortfeasor's domicile, has triggered a dispute among the parties similar to that surrounding their disagreement over the first location. The district court resolved this dispute by relying on Code Article 3548.[2] The district court concluded that Stewart and Security (the persons whose conduct caused the injury) must be deemed Louisiana domiciliaries because each was a juridical person

---

[2]Article 3548 provides:

### Art. 3548.  Domicile of juridical persons

For the purposes of this Title, and provided it is appropriate under the principles of Article 3542, a juridical person that is domiciled outside this state, but which transacts business in this state and incurs a delictual or quasi-delictual obligation arising from activity within this state, shall be treated as a domiciliary of this state.

domiciled outside of Louisiana but, nonetheless, (i) transacted business in Louisiana and (ii) incurred a tort that arose from activity within Louisiana. On appeal, United disputes this conclusion on the ground that the dispositive "activities" for the purposes of Article 3548 were the two corporate decisions that occurred in Texas and Maryland, not in Louisiana.

We are not persuaded by United's overly-narrow reading of Article 3548's reference to "a delictual ... obligation arising from activity within this state." Even accepting United's argument that an isolated corporate decision "not to act" occurred at some point in each of the home offices of Stewart and Security, in a fair reading of Article 3548 we cannot disregard the considerable business activities that Stewart and Security conducted in Louisiana, which gave rise to the underlying tort and without which the resulting injury would not have occurred. Each is an insurance company licensed by the state of Louisiana and subject to regulation by the Louisiana Insurance Commissioner. Each underwrote title insurance in Louisiana through the same New Orleans title agent, the now insolvent Charter. On behalf of Stewart and Security, Charter conducted real estate closings in Louisiana and maintained escrow accounts in, and made disbursements from, several New Orleans area banks. At the heart of this lawsuit are deficits in Charter's escrow accounts, which occurred in Louisiana. When Stewart suspected these irregularities, it conducted an audit of Charter in New Orleans. Considering the

breadth of the tortfeasors' business activities that occurred within the state of Louisiana, we affirm the district court's ruling that, in accordance with Article 3548, Stewart and Security must be treated as Louisiana domiciliaries for the purposes of the Code's choice of law rules applicable to tort actions.

Having thus determined that Louisiana is the situs of at least two of the Article 3546 locations, we hold that Louisiana substantive law governs and prohibits United's punitive damage claim.

Accordingly, the district court's dismissal of United's punitive damages claim is

A F F I R M E D.